UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SMIDTH & CO.,<br><br>           Debtor. | Chapter 11<br>Bankruptcy Case No. 08-10516 (KG)<br><br>District Court Misc. Docket No.: |

**BRIEF IN SUPPORT OF MOTION OF SMIDTH & CO. TO
TRANSFER PENDING LITIGATION INVOLVING PERSONAL INJURY CLAIMS
PURSUANT TO 28 U.S.C. § 157 (b)(5)**

**CROSS & SIMON, LLC**
Christopher P. Simon, Esq. (Bar No. 3697)
Kevin S. Mann, Esq. (Bar No. 4576)
913 North Market Street, 11th Floor
P.O. Box 1380
Wilmington, Delaware 19899-1380
Tel: (302) 777-4200
Fax: (302) 777-4224

**LOWENSTEIN SANDLER PC**
Michael S. Etkin, Esq.
S. Jason Teele, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400

16352/6
04/25/2008 6186368.1

# TABLE OF CONTENTS

Page

STATEMENT OF NATURE AND STAGE OF PROCEEDINGS..................................................1

SUMMARY OF ARGUMENT................................................................................................2

STATEMENT OF FACTS .......................................................................................................3

LEGAL ARGUMENT..............................................................................................................6

   POINT I
   THE PERSONAL INJURY ACTIONS SHOULD BE
   TRANSFERRED TO THIS COURT PURSUANT TO 28
   U.S.C. § 157(B)(5)..............................................................................................................6

   POINT II
   THIS COURT SHOULD NOT ABSTAIN FROM
   EXERCISING JURISDICTION OVER THE PERSONAL
   INJURY ACTIONS ............................................................................................................9

CONCLUSION.......................................................................................................................12

# **TABLE OF AUTHORITIES**

**PAGES**

CASES

*A.H. Robins Co. v. Piccinin,*
   788 F.2d 994 (4th Cir.) *cert. denied*, 479 U.S. 876 (1986) ................................................. 6, 10

*In re Apex Oil Co.,*
   980 F.2d 1150 (8th Cir.1992) ................................................................................................. 6

*In re AstroPower Liquidating Trust,*
   335 B.R. 309 (Bankr. D. Del. 2005) ....................................................................................... 7

*Beck v. Victor Equip. Co.,*
   277 B.R. 179 (S.D.N.Y. 2002) .............................................................................................. 10

*Colorado River Water Conservation Dist. v. United States,*
   424 U.S. 800 (1976) .............................................................................................................. 11

*In re Dow Corning Corp.,* ......................................................................................................... 11
   86 F.3d 482, 496 (6th Cir. 1996)

*Hopkins v. Plant Insulation Co.,*
   342 B.R. 703 (D. Del. 2006) ......................................................................................... 6, 7, 8, 9

*In re Hudgins,*
   102 B.R. 495 (E.D. Va. 1989) ............................................................................................... 10

*Littles v. Lieberman,*
   90 B.R. 700 (E.D.Pa. 1988) .................................................................................................... 9

*Pacor v. Higgins,*
   743 F.2d 984 (3d Cir. 1984), overruled on other grounds by *Things Remembered, Inc.
   v. Petrarca*, 516 U.S. 124 (1995) ......................................................................................... 10

*In re Pan American Corp.,*
   950 F.2d 839 (2d Cir. 1991) ................................................................................................ 6, 9

*In re Twin Laboratories, Inc.,*
   300 B.R. 836 (S.D.N.Y. 2003) ................................................................................. 6, 7, 8, 9, 11

*In re White Motor Credit Corp.,*
   761 F.2d 270 (6th Cir. 1985) ................................................................................................ 10

*In re WorldCom, Inc. Securities Litigation,*
   293 B.R. 308 (S.D.N.Y. 2003) ................................................................................................ 7

-iii-

**STATUTES**

11 U.S.C. §§ 101 ..................................................................................................................1

28 U.S.C. § 157(b)(4) ..........................................................................................................9

28 U.S.C. § 157(b)(5) ................................................................................................ passim

28 U.S.C. § 1334(c) .......................................................................................................6, 10

28 U.S.C. § 1334(c)(1) ...........................................................................................2, 10, 11

28 U.S.C. § 1334(c)(2) .................................................................................................9, 10

N.J. Stat. Ann. § 58:10-23.11 ............................................................................................4

## STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

On March 19, 2008 (the "Petition Date"), Smidth & Co., the above-captioned debtor and debtor in possession Debtor (the "Debtor") filed a voluntary petition (the "Chapter 11 Proceeding") for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). *See* Declaration of Ralph J. McCandless (the "McCandless Decl.") at ¶ 4 & Ex. A. The Honorable Kevin Gross is presiding over the Chapter 11 Proceeding. *Id.* No trustee or examiner has been appointed in the Debtor's bankruptcy case. *Id.*

The Debtor hereby moves pursuant to 28 U.S.C. § 157(b)(5), to transfer two (2) cases (the "Personal Injury Actions") from the Superior Court of California, Los Angeles County and the Superior Court of California, Alameda County (collectively, "California State Court") to the United States District Court for the District of Delaware (the "District Court"), the district in which the Debtor's chapter 11 bankruptcy case is pending.

16352/6
04/25/2008 6186368.1

-2-

## **SUMMARY OF ARGUMENT**

Transfer of the Personal Injury Actions to this Court, pursuant to 28 U.S.C. § 157(b)(5), is statutorily mandated. Such transfer will result in the most efficient resolution of the personal injury claims against the Debtor. Transfer will also ensure that the burden on the Debtor's estate is minimized and that all creditors are treated fairly and equitably. Accordingly, this Court should grant the Motion to transfer the Personal Injury Actions.

Further, the mandatory abstention provisions of 28 U.S.C. § 1334(c)(2) are inapplicable to personal injury cases transferred under 28 U.S.C. § 157(b)(5). Additionally, pursuant to 28 U.S.C. § 1334(c)(1), the District Court may abstain from hearing a proceeding "related to" a chapter 11 case, "in the interest of justice, or in the interest of comity with State courts or respect for State law." For the reasons set forth herein, the District Court should not abstain from exercising jurisdiction over the Personal Injury Actions.

## STATEMENT OF FACTS

A.  **History Of The Debtor.**

The Debtor is a Delaware corporation and a wholly owned subsidiary of FLS US Holdings, Inc. McCandless Decl. at ¶ 5. The Debtor is not currently engaged in business and, in fact, has not operated since the mid-1990's. *Id.* The Debtor's assets include a note receivable with a current unpaid balance of approximately $4,015,000 due from FLS US Holdings, Inc. and various lists of parts of an unknown and likely inconsequential value. *Id.* The Debtor is also a named insured on certain liability insurance policies that had been issued to it (but have since expired) and deemed to be a "named insured" under liability policies issued to FLS US Holdings, Inc. *Id.*

The Debtor's liabilities include contingent, unliquidated and disputed claims by the New Jersey Department of Environmental Protection and the claimants in the two (2) pending Personal Injury Actions (discussed below). *Id.* at ¶ 6 & Ex. B. The Debtor also owes approximately $656,000 to an affiliate, FL Smidth, Inc., for reimbursement of certain pension and/or retiree medical benefits payments made to former employees of the Debtor on behalf of the Debtor. *Id.*

The Debtor was incorporated in Delaware in 1923. Prior to that time, the Debtor had been in operation in the United States beginning in the late nineteenth century. *Id.* at ¶ 7. The Debtor's offices were initially located in New York, New York and were later transferred to Cresskill, New Jersey. *Id.* The Debtor also owned and operated a manufacturing plant in Lebanon, New Jersey. Currently, the Debtor's offices are located in Bethlehem, Pennsylvania. *Id.*

The Debtor's primary business was designing and furnishing equipment to the cement manufacturing industry in the United States. *Id.* at ¶ 8. Specifically, the Debtor supplied complete production plants, equipment, machines, spare parts, know-how, service and maintenance to the cement industry. *Id.*

In 1982, the Debtor sold the Lebanon, New Jersey property, and thereby ceased

the manufacturing part of its business. *Id.* at ¶ 9. At the same time, the Debtor's limited remaining business activities had declined. *Id.* The Debtor stopped taking any further orders for work after February 1990, completed work on all then-existing contracts and subsequently became dormant by the mid-1990's. *Id.*

**B.     Events Leading To The Chapter 11 Proceeding.**

On February 24, 2004, the New Jersey Department of Environmental Protection (the "NJDEP") issued a directive (the "Directive") to the Debtor pursuant to the New Jersey Spill Compensation and Control Act, N.J. Stat. Ann. § 58:10-23.11, et seq. (the "Spill Act"). *Id.* at ¶ 10. The Directive ordered the Debtor to complete the investigation/remediation of alleged environmental contamination at the facility formerly owned and operated by the Debtor in Lebanon, New Jersey. *Id.* The Debtor had previously sold this property to Cincinnati Gear, Inc. ("Gear"), and litigation ensued over who, as between the two companies, was responsible for the cleanup of the site. *Id.* This litigation was resolved with the Debtor paying a substantial sum of money to Gear and Gear agreeing to complete the cleanup and indemnify the Debtor against future cleanup claims. *Id.* Sometime after this settlement but before Gear completed the cleanup, Gear filed for chapter 11 bankruptcy protection, prompting the NJDEP to issue the Directive to the Debtor. *Id.* at ¶ 11. In accordance with the Spill Act, the Directive provides that if the Debtor does not complete the investigation and cleanup, the NJDEP will do so itself and seek to recover three times the costs of the investigation and cleanup from the Debtor. *Id.*

Additionally, in or around February 2008, the Debtor was named as a defendant in two living mesothelioma lawsuits in the California State Court alleging damages resulting from exposure to asbestos-containing products. *Id.* at ¶ 12. The first such lawsuit, Smith v. Allis Chalmers, et al. (the "Smith Action"), is currently pending in the Superior Court of California, Los Angeles County. *Id.* The second lawsuit, Dyhrman v. A.W. Chesterton, et al. (the "Dyhrman Action"), is currently pending in the Superior Court of California, Alameda County. *Id.*

In light of the cessation of the Debtor's business in the mid-1990's and the

potential liabilities stemming from the NJDEP Directive, the Smith Action and the Dyhrman Action, including the cost of defending these claims on multiple fronts, the Debtor commenced the Chapter 11 Proceeding to wind down its affairs; centralize and resolve the claim of the NJDEP; centralize and resolve (by settlement, estimation or otherwise) the two Personal Injury Actions and any future personal injury claims which may be brought in a single forum; resolve any intercompany issues, including, without limitation, the note payable due from FLS US Holdings, Inc., and liquidate any remaining assets. *Id.* at ¶ 13.

### C.   The Personal Injury Actions.

The Smith Action was filed in July of 2007. *Id.* at ¶ 14. The plaintiffs in this action are a 57 year old man who has been diagnosed with mesothelioma, and his wife. *Id.* The husband alleges that he was exposed to asbestos while working for nearly 40 years at a cement plant in Lucerne Valley, California. *Id.* The Debtor was named as a defendant on or about February 13, 2008. *Id.* & Ex. C.

The Debtor has not participated in the Smith Action because it was not a party to it until February 13, 2008. *Id.* at ¶ 15. Despite the Debtor's absence from all pre-trial conferences and discovery, the Smith Action is scheduled for trial beginning in or about June 2008. *Id.*

The Dyhrman Action was filed in November of 2007. *Id.* at ¶ 16. The plaintiffs in this action are a 64 year old man diagnosed with mesothelioma, and his wife. *Id.* The plaintiff-husband in this action worked at the same cement plant in Lucerne Valley, California as the plaintiff-husband in the Smith Action, albeit for a significantly shorter period of time (approximately five (5) years). *Id.* The Debtor was named as a defendant on or about February 20, 2008. *Id.* & Ex. D.

As is the case in the Smith Action, the Debtor has not participated in the pre-trial conferences or discovery in the Dyhrman Action because it was not named as a defendant until February 20, 2008. *Id.* The Dyhrman Action is scheduled for trial beginning on or about May 23, 2008. *Id.*

## LEGAL ARGUMENT

## POINT I

### THE PERSONAL INJURY ACTIONS SHOULD BE TRANSFERRED TO THIS COURT PURSUANT TO 28 U.S.C. § 157(B)(5)

Transfer of the Personal Injury Actions to this Court, pursuant to 28 U.S.C. § 157(b)(5), is statutorily mandated. Mandated, such transfer will result in the most efficient resolution of the personal injury claims against the Debtor. Transfer will also ensure that the burden on the Debtor's estate is minimized and that all creditors are treated fairly and equitably. Accordingly, this Court should grant the Motion to transfer the Personal Injury Actions.

Pursuant to 28 U.S.C. § 157(b)(5),

> the district court *shall* order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

28 U.S.C. § 157(b)(5) (emphasis added). Section 157(b)(5) is intended to centralize administration of bankruptcy estates, to eliminate the "multiplicity of forums for the adjudication of parts of a bankruptcy case," and "to eliminate the confusion, delay and inefficiencies associated with the Bankruptcy Act's limited jurisdictional scheme." *In re Pan American Corp.*, 950 F.2d 839, 845 (2d Cir. 1991)(quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1011 (4th Cir.) *cert. denied*, 479 U.S. 876 (1986)).

While the language of 28 U.S.C. § 157(b)(5) is mandatory, courts have held that this provision requires an abstention analysis pursuant to 28 U.S.C. § 1334(c). *See, e.g., Hopkins v. Plant Insulation Co.*, 342 B.R. 703, 710 (D. Del. 2006); *In re Twin Laboratories, Inc.*, 300 B.R. 836, 840 (S.D.N.Y. 2003); *In re Apex Oil Co.*, 980 F.2d 1150, 1152-53 (8th Cir.1992). In determining whether abstention is appropriate, courts consider twelve factors:

(1) the effect on the efficient administration of the estate,

  (2) the extent to which state law issues predominate over bankruptcy issues,

  (3) the difficulty or unsettled nature of applicable state law,

  (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court,

  (5) the jurisdictional basis, if any, other than section 1334,

  (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case,

  (7) the substance rather than form of an asserted "core" proceeding,

  (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court,

  (9) the burden on the court's docket,

  (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties,

  (11) the existence of a right to a jury trial, and

  (12) the presence of non-debtor parties.

*Hopkins*, 342 B.R. at 710 (*quoting In re AstroPower Liquidating Trust,* 335 B.R. 309, 330 (Bankr. D. Del. 2005). *See also Twin Labs*, 300 B.R. at 841-842 (quoting *In re WorldCom, Inc. Securities Litigation*, 293 B.R. 308, 332 (S.D.N.Y. 2003)).

  The *Twin Labs* court recognized that the factors most relevant to a section 157(b)(5) transfer motion are the first, second, third, fourth, fifth, eighth, eleventh, and twelfth factors. *Twin Labs*, 300 B.R. at 8410842. Of those factors, the court found that only the second and third factors -- the difficulty of and the extent to which state law issues predominate over bankruptcy issues -- potentially weighed against transfer. However, after a thorough analysis, equally applicable here, the court ruled that state law personal injury issues were not "difficult, unsettled, or unfamiliar to a federal court" that deals routinely with state-law personal injury cases. *Id.* The court also noted that the state law issues cannot be given "decisive effect in

analyzing transfer under § 157(b)(5), for the very subject matter of that section - personal injury claims - is almost always governed by state law, and yet Congress, in enacting § 157(b)(5), singled out such claims as the very ones it wanted transferred." *Id.*

The *Hopkins* case stands in contrast to *Twin Labs*, primarily due to the novel circumstances involved. The moving party in *Hopkins* was a non-debtor plaintiff attempting to transfer a personal injury action pending in the Supreme Court of California to the United States District Court for the District of Delaware, where the debtor-defendant had filed its bankruptcy case. *See Hopkins*, 342 B.R. at 706-707. The transfer motion was opposed by the debtor. *Id.* at 707. After an analysis of the twelve factors, the *Hopkins* court determined to abstain from hearing the matter, giving great weight to the fact that the state court action would not have any impact on the debtor's bankruptcy or the plan of reorganization, and the fact that the movant likely was engaged in improper forum shopping. *Id.* at 711, 714-15  In fact, the *Hopkins* court added a thirteenth factor -- the use of section 157(b) -- noting that in the Third Circuit, section 157(b) "has typically been invoked by a debtor who is named as a defendant or co-defendant in the action." *Id.* at 716. The court went on to state that the debtor in the case had "selected a forum . . . and the Court is not persuaded that the home court presumption should be used against the Debtor to invalidate its choice." *Id.*

It is clear that the *Twin Labs* analysis applies in this case, and transfer of the Personal Injury Actions to this Court is appropriate. Transfer of the Personal Injury Actions will ensure a more efficient administration of the Debtor's estate: the forum is convenient for the Debtor and its witnesses, the books and records of the Debtor are more easily accessible, litigation in this forum would be less costly for the Debtor's estate, adjudication will be more efficient because the Personal Injury Actions can be resolved in one forum, and a determination in this Court will avoid the risk of conflicting results between the California State Court and this Court. Moreover, because of the automatic stay of section 362(a) of the Bankruptcy Code, were the Personal Injury Actions allowed to proceed in the California State Court, factual findings, pre-trial proceedings and discovery in the Personal Injury Actions could be unduly prejudicial to

the Debtor in its absence.

Further, while state law personal injury issues predominate in the Personal Injury Actions, they are not "difficult, unsettled, or unfamiliar to a federal court" that deals routinely with state-law personal injury cases. *Twin Labs*, 300 B.R. at 841-42. No other state court or non-bankruptcy court actions will be pending once the Personal Injury Actions are transferred to this Court together. Moreover, resolution of the Personal Injury Actions is inextricably linked to the successful resolution of the Debtor's Chapter 11 Proceeding and not easily severed from the bankruptcy case. As described above, the Debtor cannot fully distribute its remaining assets to creditors without some resolution of the Personal Injury Actions, either through estimation and/or objection to allowance in the Bankruptcy Court or trial in this Court. Thus, any plan of reorganization filed by the Debtor in the Chapter 11 Proceeding is dependent on a centralized resolution of the Personal Injury Actions. Finally, this Court is more than capable of conducting a jury trial, if that is the plaintiffs' right.

Accordingly, the Personal Injury Actions should be transferred to this Court, pursuant to 28 U.S.C. § 157(b)(5).

## POINT II

### THIS COURT SHOULD NOT ABSTAIN FROM EXERCISING JURISDICTION OVER THE PERSONAL INJURY ACTIONS

A.  **Mandatory Abstention is Not Applicable**

The mandatory abstention provisions of 28 U.S.C. § 1334(c)(2) are inapplicable to personal injury cases transferred under 28 U.S.C. § 157(b)(5). Indeed, 28 U.S.C. § 157(b)(4) specifically provides that "non-core proceedings under Section 157(b)(2)(D) ... shall not be subject to the mandatory abstention provisions of Section 1334(c)(2)." *Id.; see also Hopkins,* 342 B.R. at 710; *Littles v. Lieberman,* 90 B.R. 700, 709 (E.D.Pa. 1988). Those courts which have addressed the issue have uniformly held that mandatory abstention does not apply to claims transferred pursuant to 28 U.S.C. § 157(b)(5). *See, e.g., In re Pan-Am. Corp.,* 950 F.2d 839 at

845 (2d Cir. 1991); *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 at 1010 N.14 (4th Cir. 1986), *cert. denied*, 479 U.S. 876 (1986); *In re White Motor Credit Corp.*, 761 F.2d 270, 272 (6th Cir. 1985), *In re Hudgins*, 102 B.R. 495, 498 (E.D. Va. 1989); *Beck v. Victor Equip. Co.*, 277 B.R. 179, 180 (S.D.N.Y. 2002).

Based upon the foregoing clear statutory and case law authority, the Debtor respectfully submits that the mandatory abstention provisions of 28 U.S.C. § 1334(c)(2) are inapplicable in this case.

**B.**     **Permissive Abstention**

The United States District Court has original but not exclusive jurisdiction of all proceedings "related to" cases under Title 11. 28 U.S.C. § 1334(c). A civil proceeding is "related to" a bankruptcy case when "the outcome of that proceeding could conceivably have any affect on the estate being administered in bankruptcy." *Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), overruled on other grounds by *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995). In *Pacor*, the Third Circuit found that a proceeding is "related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action [either positively or negatively], and which in any way impacts upon the handling and administration of the bankruptcy estate." *Pacor*, 7443 F.2d at 994.

It is beyond cavil that the Personal Injury Actions constitute proceedings "related to" the Debtor's Chapter 11 Proceeding. The claims asserted in the Personal Injury Actions, if allowed, could have a material impact on the Debtor's ability to fairly distribute assets to creditors and interest holders. Moreover, rulings made by the California State Court could have a significant and material effect on the rights of the Debtor or other parties-in-interest in the Chapter 11 Proceeding. As such, this Court has original, but not exclusive jurisdiction over the Personal Injury Actions. *See* 28 U.S.C. § 1334(c)(1)

Pursuant to 28 U.S.C. § 1334(c)(1), the District Court may abstain from hearing a proceeding "related to" a chapter 11 case, "in the interest of justice, or in the interest of comity

with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). In determining whether to abstain over a related proceeding, the courts must take into account "the strong legislative presumption favoring transfer under 28 U.S.C. § 157(b)(5); for in this context, perhaps even more than elsewhere, federal courts have a virtually unflagging obligation ... to exercise the jurisdiction given them." *Twin Labs*, 300 B.R. at 841 (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). Courts have recognized that centralizing all personal injury claims against a chapter 11 debtor will assist in both administering a debtor's plan and assuring a fair and non-preferential resolution of outstanding claims. *See, e.g., In re Dow Corning Corp.*, 86 F.3d 482, 496 (6th Cir. 1996). While not confronted with the number of personal injury actions as in the Dow Corning case, the Personal Injury Actions at issue here can have no less an impact on the Debtor's estate.

Based upon the foregoing, the Debtor respectfully submits that permissive abstention under 28 U.S.C. § 1334(c)(1) should not be exercised and that this Court should retain jurisdiction over the Personal Injury Actions.

## CONCLUSION

For the reasons and on the authorities cited herein, the Debtor respectfully requests that this Court transfer the Personal Injury Actions to this Court, pursuant to 28 U.S.C. § 157(b)(5), for appropriate administration, and grant such other and further relief as may be just and proper.

Respectfully submitted,

**CROSS & SIMON, LLC**

/s/ *Christopher P. Simon*
Christopher P. Simon, Esq. (Bar No. 3697)
Kevin S. Mann, Esq. (Bar No. 4576)
913 North Market Street, 11th Floor
P.O. Box 1380
Wilmington, Delaware 19899-1380
Tel: (302) 777-4200
Fax: (302) 777-4224

-and-

**LOWENSTEIN SANDLER PC**
Michael S. Etkin, Esq.
S. Jason Teele, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400

*Co-Counsel to Smidth & Co.*

Dated: April 25, 2008
       Wilmington, Delaware